United States District Court
Southern District of Texas
**ENTERED**
August 20, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WOODLANDS OUTPATIENT SURGICAL CENTER, as assignee of Lynda Old, | § § § | |
| Plaintiff, | § § | |
| V. | § | CIVIL ACTION NO. H-17-1476 |
| AMERICA BUREAU OF SHIPPING, INC. EMPLOYEE BENEFIT PLAN, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM AND RECOMMENDATION**

The parties' pending re-urged Cross Motions for Summary Judgment (Document Nos. 42 & 43) have been referred by the District Judge to the undersigned Magistrate Judge for a Memorandum and Recommendation. Having considered those motions, the responses and additional briefing, the administrative record, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 43) and Plaintiff's Motion for Summary Judgment (Document No. 42) both be DENIED.

**I.     Background**

This is an ERISA benefits case arising out the payment by the Defendant ERISA plan of $7,278.48 of the $169,661.58 billed by Plaintiff for spinal surgery on a plan beneficiary, Lynda Old. The plan beneficiary ("Old") assigned her ERISA claim to Plaintiff (Woodlands Outpatient Surgical Center, "Woodlands"), which now seeks to recover the entire amount it billed for Old's surgery from the ERISA Plan (American Bureau of Shipping, Inc. Employee Benefit Plan, "ABS Plan"). In the Amended Complaint filed on March 13, 2018 (Document No. 15), Woodlands asserts a cause of

action to recover benefits due from ABS Plan under 29 U.S.C. § 1132(a)(1)(B) and a cause of action for ERISA Estoppel based on Defendant's alleged material misrepresentations about the bases and stated reasons for denying full payment of the claim.

The parties filed cross motions for summary judgment on both claims. In an Order entered on September 9, 2019, the motions were denied, but without prejudice to being reurged by reference to the *de novo* standard of review discussed in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). ABS Plan objected to that Order and argued in connection therewith that a *de novo* standard of review was not applicable to this case given that it is a fully self-funded plan. The District Court overruled the objections and the parties subsequently filed re-urged Motions for Summary Judgment.

In its re-urged Motion for Summary Judgment Woodlands argues that the reimbursement amount it was paid for Old's surgery is not consistent with the terms of the plan, and that the reimbursement provisions in a 2014 Summary Plan Description document were never incorporated into, or validly made a part of, the Plan. In addition, Woodlands argues that the Declaration Cathleen W. Ackerman has submitted in this case, in which she details the way the reimbursement was calculated by Defendant, cannot be considered because it was not part of the administrative record, and no such detail or explanation is contained in the administrative record that would justify the reimbursement rate or amount it was paid for Old's surgery. ABS Plan argues, in response and in its own Renewed Motion for Summary Judgment, that the 2014 Summary Plan Description was validly incorporated into the plan, and that the reimbursement it provided is consistent with the terms of the 2014 Summary Plan Description document, which provided for "50 percent of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same

or similar service within the geographic market." In addition, ABS Plan argues that on *de novo* review of the administrative record Woodlands' claim to an additional $162,383.10 in reimbursement for Old's surgery is not supported by any evidence of the reasonableness of that amount.

## II. Administrative Record

Because this is an ERISA case, brought pursuant to 29 U.S.C. § 1132(a)(1)(B), it is for the Court to determine, *from the administrative record*, whether the underlying benefit determination was proper. The standard for making such a determination is not particularly clear following the Fifth Circuit's decision in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018 and ABS Plan's revelation that it is a self-funded plan. *See Gilmour v. Aetna Health, Inc.*, No. SA-17-CV-00510-FB, 2020 WL 3184365 * 9-10 (W.D. Tex. June 12, 2020) (Report and Recommendation) (discussing uncertainty about the standard of review following *Ariana M*, including outstanding questions about whether Texas' anti-delegation statute applies to self-funded plans, and whether state anti-delegation statutes would or should be considered preempted by ERISA).

Despite that uncertainty about the standard of review to be applied, it does remain clear that it is for the Court to review the underlying record. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013) ("We limit our review of the interpretation of a benefits plan under ERISA to the administrative record"). That underlying record, and the parties' respective positions during that administrative process, are what have significantly complicated this case. Neither side, at this point, is taking the same position it did during the administrative proceedings.

Woodlands argued at various points during the administrative proceedings that it was entitled to 50% of the amount it billed for Old's surgery – not the 100% is now seeking here. ABS Plan, through its Claims Administrator, United Healthcare ("UHC"), maintained during the administrative review proceedings that the claim was processed (and the amount of reimbursement provided ($7278.48)) according to the "plan provisions." ABS Plan now maintains that it used a type of gap methodology to determine the reimbursement rate, with the details of that methodology being described by Catherine Ackerman for the first time in her submitted Declaration. ABS Plan also now argues herein, though it did not so argue in the administrative proceedings, that Woodlands failed to offer any proof of the reasonableness of the amount it billed for Old's surgery. Finally, ABS argues in its most recent briefing (Document No. 44 at 2, 5, 14-15), that the amount it paid Woodlands was in accord with that part of the policy which set forth a reimbursement rate for out-of-network providers at "110% of the available published rates allowed by Medicare for the same or *similar service* within the geographic market." Given the parties' varying positions, at both the administrative level, and herein, on the reimbursement rate required by policy, the nature and contents of the administrative record are set forth, as follows, in chronological order:

- October 8, 2014, Old had surgery at Woodlands. In a bill for that surgery, the procedures were assigned codes 63047 and 63048, and the amount billed for each coded procedure was $96,94949 and $72,712.09, respectively

- January 9, 2015, an Explanation of Benefits from UHC was provided to Old. That explanation of benefits allowed $4,159.13 for the 63047 coded procedure, and $3,119.35 for the 63048 coded procedure, for a total reimbursement amount of $7,278.40. The only explanation for the amount of reimbursement is in the "Notes" section of the Explanation of Benefits, which states: "THIS PHYSICIAN OR HEALTH CARE PROVIDER IS OUT-OF-NETWORK. THIS SERVICE WAS PAID BASED ON AMOUNTS SET BY MEDICARE OR OTHER SOURCES IF NO MEDICARE AMOUNT IS AVAILABLE."

- February 3, 2015, Woodlands appealed the benefit determination to UHC. In that appeal letter, Woodlands stated:
  > This claim represents an Ambulatory Surgical Center (ASC) claim, not an Outpatient Hospital or Professional Fee claim. There is no published CMS/Medicare rate for the services provided during Ms. Old's surgery. Specifically, CMS does not have a published ASC Facility Fee Rate for CPT codes 63047 and 63048. This fact can be confirmed on the CMS website (www.CMS.gov) or by reviewing the attached page(s) printed from the CMS website which verify that CPT codes 63047 and 63048 are absent from the Medicare ASC Reimbursement Rate List.
  > **According to the terms of Ms. Old's benefit plan (copy enclosed), the Eligible Expense amount is based on 50% of the provider's billed charges when there is no CMS published rate for the service provided.**
  > **Therefore, we expect this claim to be correctly reprocessed using an allowed amount based on 50% of our total billed charge.**

- May 28, 2015, the appeal was denied in a letter from UHC. In that essentially form denial letter, UHC wrote, in pertinent part:

  > Maximum Non-Network Reimbursement Program (MNRP) is a program used to reimburse non-network physicians, facilities and other health care providers. MNRP uses rates and methodologies published by Medicare and replaces Reasonable and Customary (R&C) processing for plans that utilize MNRP. This program uses the Centers for Medicare and Medicaid Services (CMS) Fee Schedules.

  > Non-network physicians, other health care providers and facilities are free to set their prices for the services they provide. United Healthcare has no control over these billed charges or annual increases. These increases can have a significant impact on costs for our customers over time.

  > Your plan defines eligible expenses as the amount that the plan will pay for covered health services incurred while the policy is in effect, and are determined as stated below.

  > When covered health services are received from non-network providers, eligible expenses are determined, based on the following applicable criteria, to the extent available, in the order of priority identified below.

5

>> 1. Fee(s) that are negotiated with the provider; or
>> 2. 110% of the available published rates allowed by Medicare for the same or similar service within the geographic market; or
>> 3. A fee schedule that we develop; or
>> 4. 50% of the billed charge.
>
> \* \* \*
>
> Because the claim(s) for this service(s) was processed according to the above plan provisions, the original determination remains uncharged, and is upheld.

- June 22, 2015, Woodlands filed a second level appeal with UHC. That June 22, 2015 letter contained the same appeal rationale as the first level appeal letter. The letter also asked for "a copy of the entire Health Benefit Plan document and Summary Plan Description."

- July 22, 2015, UHC denied the second level appeal. In the denial letter, UHC wrote:
  > For non-network providers, eligible expenses are based on either of the following:
  >
  > When covered health care services are received from non-network providers, eligible expenses are determined based on the following applicable criteria, to the extent available, in the order of priority identified below:
  >> 1. Fee(s) that are negotiated with the provider;
  >> 2. 110% of the available published rates allowed by Medicare for the same or similar service within the geographic market;
  >> 3. A fee schedule that we develop;
  >> 4. 50% of the billed charge.
  >
  > Eligible expenses are determined solely in accordance with our reimbursement policy guidelines. We develop our reimbursement policy guidelines, in our discretion, following evaluation and validation of all provider billings in accordance with one or more of the following methodologies:
  >> 1. As indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare

6

> and Medicaid Services (CMS).
> 2. As reported by generally recognized professionals or publications.
> 3. As used for Medicare.
> 4. As determined by medical staff and outside medical consultants pursuant to other appropriate source, or determination that we accept.
>
> Based on the language contained in your Summary Plan Description, amounts in excess of eligible expenses are excluded from coverage. As you know, our contracts are structured so that you receive the highest level of benefits when you use a network provider to obtain covered health services, and are priced accordingly. We urge you to talk with any non-network provider about what your liability may be before you receive any services.
>
> * * *
>
> Because the claim(s) for this service(s) was processed according to the above plan provisions, the original determination remains unchanged, and is upheld. Therefore, your second appeal is denied. . . .

Following the conclusion of the two level appeal process, Woodlands engaged ERISA Claims Specialists, LLC ("ECS") to pursue its reimbursement claim against ABS Plan. In connection with that engagement, ECS, having obtained from ABS Plan a 2012 Summary Plan Description ("SPD"), argued in a letter to Justin Hall, Senior Counsel for ABS, dated February 11, 2016, that Woodlands was entitled to the full amount of its claim because: (1) there had been, based on ABS Plan's representations, no amendments to the ABS Plan from the date it was adopted in 2003; (2) "the 2012 SPD was not used by [United Healthcare] to process [the] claim;" and (3) [t]he Plan is devoid of any language which limits payments for benefits." (Document No. 21-1 at pp. 115-118). Justin Hall responded to that letter with one of his own, dated March 4, 2016, in which he relied upon specific

terms in a 2012 SPD for ABS Plan's position that the proper reimbursement had already been provided to Woodlands (Document No. 21-1 at pp. 131-137).  Shortly after that letter was sent, Hall provided ECS with a copy of a 2014 SPD.  It is, now, both the existence and terms of the 2014 SPD that form the basis of the parties' positions in this case.

The terms of the 2014 SPD as they relate to this reimbursement claim are as follows:

Eligible Expenses – Eligible Expenses for Covered Health Services, incurred while the Plan is in effect, are determined as stated below.

Eligible Expenses are based on either of the following:
- For Network Benefits, Eligible Expenses are based on either of the following:
  - When Covered Health Services are received from Network providers, Eligible Expenses are the contracted fee(s) with that provider.

- For Non-Network Benefits, Eligible Expenses are determined by either:
  - if rates have not been negotiated, then one of the following amounts:
    ♦ 110 percent of the published rates allowed by the *Centers for Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market, or
    ♦ When a rate is not published by *CMS* for the service, the Claims Administrator uses an available gap methodology to determine a rate for the service as follows:
      - uses a gap methodology that uses a relative value scale, which is usually based on the difficulty, time, work, risk and resources of the service.  The relative value scale currently used is created by *Ingenix*.  If the *Ingenix* relative value scale becomes no longer available, a comparable scale will be used.  The Claims Administrator and *Ingenix* are related companies through common ownership by UnitedHealth Group.
      - For Pharmaceutical Products, the Claims Administrator uses gap methodologies that are similar to the pricing methodology used by *CMS*, and produces fees based on published acquisition costs or average wholesale price for the pharmaceuticals.  These methodologies are currently created by *RJ Health Systems, Thomas Reuters* (published in its Red Book), or the Claims Administrator based on an internally developed pharmaceutical pricing resource.
      - When a rate is not published by *CMS* for the service and a gap methodology does not apply to the service, or the

> provider does not provide sufficient information on the claim to pay it under *CMS* published rates or a gap methodology, the Eligible Expense is based on 50 percent of the provider's billed charge, except that certain Eligible Expenses for mental health and substance use disorder services are based on 80 percent of the billed charge.

(Document No. 21-2 at 469-470). In addition, Cathleen Ackerman, in the Declaration filed in this case, explained, as follows, how the terms of the 2014 SPD were relied upon in determining the reimbursement rate for Old's surgery:

> 8. The 2014 SPD provides, in relevant part, the following regarding the determination of Eligible Expenses for Non-Network Benefits:
> If rates have not been negotiated, then one of the following amounts:
> - 110 percent of the published rates allowed by the Center for Medicaid Services (CMS) for Medicare for the same or similar service within the geographic region, or
> - When a rate is not published by the CMS for the service, the Claims Administrator uses an available gap methodology to determine a rate for the services, or
> - When a rate is not published by the CMS for the service and a gap methodology does not apply to the service, or the provider does not submit sufficient information on the claim to pay it under CMS published rates or a gap methodology, the Eligible Expense is based on 50% of the provider's billed charges.
> Eligible Expenses are subject to the Claims Administrator's reimbursement policy guidelines.
>
> 9. Since [Woodlands] did not participate in the Medicare programs or as a Medicare provider, United determined the CMS rate for eligible expenses by using the average reimbursement rate for three (3) like facilities in a 30 mile geographic radius, thereby establishing reimbursement alignment with other non-network facilities which are Medicare participants.
>
> 10. To do so in this case, United identified 3 like facilities to [Woodlands] in the same geographic region, but that were Medicare participants – Sterling Ridge Surgical Center; First Surgical Woodlands; and Vivere Dallas Surgery Center.
>
> 11. Next, UHC identified ten (10) random claims previously submitted by [Woodlands] under group health plans administered or insured by UHC for

9

which a Medicare published rate was available. United used the average of the CMS reimbursed rates for the three (3) like facilities and applied that percentage to [Woodlands'] claim to determined the allowable charges.

12. United used the allowed charges and the actual charges billed by [Woodlands] to calculate the "Allowed Charges Ratio" (*i.e.*, the ration of allowed charges for the similar Medicare provider facility to [Woodlands'] actual billed charges) for each randomly selected claim. For example, if the allowed charges for a particular re-priced random claim were $4,000 for the similar Medicare participant, and [Woodlands] had billed $100,000 for that same random claim, then the Allowed Charges Ration would be 4%. After completing the foregoing steps, United had thirty (30) separate Allowed Charges Ratios, from which we then determined the average.

13. With respect to the adjudication of the claim submitted by [Woodlands] for Old's surgery, the average of the Allowed Charges Ratios for the random claims was 3.9%.

14. Applying the Allowed Charges Rations to $169,661.58 in billed charges resulted in an allowed amount of $6,616.81. 110% of the allowed amount equaled $7,248.48, which is the amount paid to [Woodlands] for the services it provided to Old.

(Document No. 21-4 at pp. 3-4). It is within the context of this summary judgment evidence, primarily from the administrative record, that the parties' respective Motions for Summary Judgment must be considered.

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably

be resolved in favor of either party." *Id.* at 250. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324. In ruling on summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

      This summary judgment standard applies in ERISA benefit cases, and it is for the Court to determine, from the administrative record, whether there is a genuine issue of material fact on whether the benefits decision was based on a legally correct interpretation of the plan. *See Gilmour*, 2020 WL 3184365 at *9 (it is for the court to determine under either a *de novo* or abuse of discretion standard whether the benefits decision was based on a legally correct interpretation of the plan).

**III.     Discussion**

Pursuant to 29 U.S.C. § 1132(a)(1)(B), ERISA plan participants and beneficiaries may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  It is not disputed that the surgical procedure Old had at Woodlands was covered by the terms of the ABS Plan.  It is also not disputed that Woodlands was an "out-of-network" provider, that there were no negotiated rates, and that there was, at the time of Old's surgery, no CMS code or CMS rate for the specific procedures performed.  The parties do dispute whether it is the terms of the 2012 SPD or the 2014 SPD that control.  They also dispute whether the there was a "gap methodology" used to calculate the reimbursement rate, and whether the methodology used to calculate the reimbursement rate was provided for in, or was otherwise consistent with, the terms of the plan.  For the reasons that follow, the undersigned Magistrate Judge concludes that under either an abuse of discretion or *de novo* standard of review, the reimbursement provided to Woodlands conformed and aligned with the controlling 2014 SPD, and that summary judgment is therefore warranted in ABS Plan's favor.

**A.     2014 SPD**

Woodlands argues, primarily, that the terms of the 2014 SPD are not applicable because the 2014 SPD was not incorporated into the plan.  In support of this argument, Woodlands points to the written statement of Justin Hall that the Plan had not been amended since the time of its inception in 2003.  Woodlands also points to the absence of any Board action adopting the 2014 SPD.

The 2014 SPD, submitted by ABS Plan as part of its Summary Judgment motion, has printed on its cover page, an "effective" date of January 1, 2014, and states in Section 1 that it "supersedes

any previous printed or electronic SPD for this Plan." (Document No. 21-1 at p. 374, 381). In addition, 7.10 of the Plan states that SPDs are incorporated into the plan, and there is uncontroverted affidavit evidence that the 2014 SPD was adopted by ABS Plan's Board, and was made available to ABS employees. *See* Declaration of Dawn Carline (Document No. 21-3). Moreover, the Fifth Circuit has made it clear that SPDs become part of the plan if they are incorporated into the plan. *See Burrell v. Prudential Ins. Col. Of Am.*, 820 F.3d 132, 137 (5th Cir. 2016) (where plan anticipated and incorporated a subsequent SPD, that SPD became part of the plan). Based on the evidence in the record, as well as Fifth Circuit authority that recognizes SPDs as enforceable parts of an ERISA plan, *id.*, the undersigned concludes that the 2014 SPD is the document that governs the plan and the benefit decision at issue.

### B. Benefits Claim

A claim for ERISA benefits requires the Court to determine whether the benefits decision at issue is based on a legally correct interpretation of the plan. *Gilmour* at *9. This is true regardless of whether the Court reviews the decision *de novo* or for an abuse of discretion. *Id.* Here, the plan provides, through the 2014 SPD, for reimbursement of covered, out-of-network procedures when a rate has not been negotiated, in one of three ways:

- 110 percent of the published rates allowed by the *Centers for Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market, or
- When a rate is not published by *CMS* for the service, the Claims Administrator uses an available gap methodology to determine a rate for the service as follows:

    - uses a gap methodology that uses a relative value scale, which is usually based on the difficulty, time, work, risk and resources of the service. The relative value scale currently used is created by *Ingenix*. If the *Ingenix* relative value scale becomes no longer available, a

> comparable scale will be used. The Claims Administrator and *Ingenix* are related companies through common ownership by UnitedHealth Group.
>
> * * *
>
> - When a rate is not published by *CMS* for the service and a gap methodology does not apply to the service, or the provider does not provide sufficient information on the claim to pay it under *CMS* published rates or a gap methodology, the Eligible Expense is based on 50 percent of the provider's billed charge, except that certain Eligible Expenses for mental health and substance use disorder services are based on 80 percent of the billed charge.

By their own terms, these three bases for out-of-network reimbursement are not mutually exclusive. In addition, nothing in the plan or the 2014 SPD dictates which basis for reimbursement should control.

Here, as set forth in the Declaration of Catherine Ackerman, the reimbursement to Woodlands was based on "110 percent of the published rates allowed by the *Centers for Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market." Ackerman explained in her Declaration how Medicare reimbursement rates for non-Medicare providers in the same geographic area were calculated. That percentage was then applied to Woodlands' charges for the two procedures. The reimbursement was not based on a "gap methodology," much less an undefined or faulty gap methodology, as argued by Woodlands. Instead, the reimbursement was based on Medicare reimbursement rates for similar providers in the same geographic area. That calculation was generally consistent with the terms of the plan and the 2014 SPD regardless of whether the calculation is reviewed *de novo* or for an abuse of discretion.

That determination would generally end the matter in a typical benefits claim under ERISA. Here, that determination is not enough to resolve the case because the basis for the calculation, while

generally consistent with the terms of the plan and the 2014 SPD, was not articulated by ABS Plan during the administrative proceedings. It was only in this case, in connection with ABS Plan's Motion for Summary Judgment and with the submission of Ackerman's declaration, that ABS Plan disclosed and explained how the reimbursement rate was calculated. The timing of that disclosure – in this case – provides the basis for Woodlands' efforts to exclude Ackerman's declaration. It also gives rise to concerns that Woodlands was not provided a full and fair review of the reimbursement decision at the administrative level.

In the absence of Ackerman's Declaration, the contents of the administrative record, standing alone, would be insufficient for the Court to determine, under either *de novo* or an abuse of discretion standard of review, whether the reimbursement amount was consistent with the terms of the plan and the 2014 SPD. That is because the administrative record does not contain information about published rates allowed by CMS for "the same or similar service without the geographic market" from which a 110% rate could be calculated. As set forth above, there was no CMS rate code for the procedures at issue. In addition, while ABS Plan points to a CMS rate sheet, provided by Woodlands in connection with its administrative appeal, that includes other spinal procedures, nothing in the administrative record indicates which other spinal procedures could be considered "similar" to that at issue herein. Similarly, none of the information detailed by Ackerman in her Declaration about the calculation of "Allowed Charges Ratios" is in the administrative record. The contents of Ackerman's Declaration go well beyond what is contained in the administrative record, and attempt to support, with factual information, the basis for the reimbursement rate. That type of information, outside the administrative record, cannot be used to support the benefits decision at issue. *See Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th

Cir. 2000) ("Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim."). Because Ackerman's Declaration cannot do in this case what ABS Plan failed to do at the administrative level, and because the administrative record does not, in the absence of Ackerman's Declaration, support the benefits decision at issue, ABS Plan is not entitled to summary judgment on Woodlands' § 1132 claim for benefits. Woodlands is also not entitled to summary judgment on its § 1132 claim for benefits because the administrative record, when viewed in the context of the 2014 SPD, likewise does not support the relief Woodlands seeks herein – the payment of the entire amount billed ($169,661.58).

As for Woodlands' equitable estoppel claim, because it is based, in large part, on the varying rationales provided by ABS Plan for the reimbursement calculation, and is intertwined with the merits of the underlying benefits claim, summary judgment is also not warranted on that claim for either side.

### IV.     Conclusion and Recommendation

Based on the foregoing, and the conclusions that the administrative record does not support, under either de novo or an abuse of discretion review, the reimbursement provided to Woodlands for plan beneficiary Lynda Old's spinal surgery, and that Woodlands has not demonstrated its entitlement, under the terms of the controlling 2014 SPD, to the reimbursement amount sought, the

Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 21) and Plaintiff's Motion for Summary Judgment (Document No. 22) both be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); Ware v. King, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 20th day of August, 2020.

Frances H. Stacy
United States Magistrate Judge